```
                    United States District Court
                     District of Massachusetts
 _____
                                )
DELYNN J. SPELEOS and JESSE S.  )
SPELEOS,                        )
        Plaintiffs,             )
                                )    Civil Action No.
        v.                      )    10-11503-NMG
                                )
BAC HOME LOANS SERVICING, L.P., )
d/b/a BANK OF AMERICA HOME      )
LOANS, FEDERAL NATIONAL MORTGAGE)
ASSOCIATION, d/b/a FANNIE MAE   )
and ORLANS MORAN, PLLC,         )
        Defendants.             )
 _____ )
```

**MEMORANDUM & ORDER**

**GORTON, J.**

Plaintiffs Delynn J. and Jesse S. Speleos ("the Plaintiffs") bring suit against BAC Home Loans Servicing, L.P., d/b/a Bank of America Home Loans ("BAC"), Federal National Mortgage Association, d/b/a Fannie Mae ("FNMA") and Orlans Moran, PLLC ("Orlans Moran") (collectively, "the Defendants") for negligence (Count I), third-party breach of contract (Count II), a violation of the covenant of good faith and fair dealing (Count III) and a violation of the Fair Debt Collection Practices Act, 15 U.S.C. § 1692k (Count IV).

Before the Court are the Plaintiffs' motion for a memorandum of lis pendens and the Defendants' motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6) for failure to state a claim upon which relief can be granted.

-1-

## I. Factual Background

Generally, the Plaintiffs allege that the Defendants violated the Home Affordable Modification Program ("HAMP") Guidelines by conducting a foreclosure sale of their residence while the Plaintiffs were under consideration for a loan modification.

The Plaintiffs purchased their residence at 750 Whittenton Street, Unit 1022, Taunton, Massachusetts ("the Property") in October, 2007 for $175,900. The purchase was financed with a 100% loan from Stonebridge Mortgage Company for $175,900 secured by a mortgage in favor of Mortgage Electronic Registration Systems, Inc. Fannie Mae owned the mortgage and BAC was the servicer. In November, 2009, Mr. Speleos became unemployed. Although Ms. Speleos remains employed, the Plaintiffs became unable to maintain their mortgage payments and sought to modify their loan in March, 2010 pursuant to the HAMP program.

HAMP was created by Congress under the Emergency Economic Stabilization Act of 2008 and is governed by guidelines set forth by Fannie Mae and the United States Department of the Treasury. The Servicer Participation Agreements between mortgage loan servicers and Fannie Mae require the servicers to perform loan modification and foreclosure prevention services specified in the HAMP Guidelines.

Ms. Speleos requested a loan modification application from

BAC in March, 2010 and received it on July 1, 2010.  She filled out the application and filed it with BAC on July 6, 2010.  After faxing and re-faxing additional requested financial information, her application was complete on July 15, 2010.

Meanwhile, on July 1, 2010, BAC, with the assistance of its attorneys at Orlans, scheduled a foreclosure sale of the Property for August 5, 2010.  The Plaintiffs claim that BAC violated the HAMP Guidelines, which provide that a mortgage cannot be referred to foreclosure if a homeowner has not been evaluated for a HAMP loan modification and a foreclosure must be cancelled while the HAMP application is pending.  In late July, 2010, after Ms. Speleos contacted the Making Home Affordable ("MHA") Help Center, a MHA representative informed BAC that it was violating the HAMP Guidelines.  Despite that admonition, the BAC representative refused to cancel the foreclosure sale or allow the MHA representative to speak with a supervisor.  BAC's counsel, Orlans, refused to cancel the sale.

On August 5, 2010, the Property was sold to BAC at a foreclosure auction for $148,803.  The sale was conducted by BAC, Fannie Mae and Orlans.  A few days later, BAC assigned its bid to Fannie Mae, which is the current owner of the Property.  The Defendants have begun eviction proceedings against the Plaintiffs, who fear that they will be unable to regain ownership in any event.

The Plaintiffs seek the rescission of the foreclosure sale and restoration of title to them, an order requiring BAC and Fannie Mae immediately to consider a loan modification under HAMP for their loan or other alternatives to foreclosure, compensatory damages, attorney's fees, costs and all other relief that the Court deems just and proper.

**II. Procedural History**

The Plaintiffs filed their complaint on September 1, 2010 and their motion for a memorandum of lis pendens that same day. On October 12, 2010, the Defendants moved to dismiss. A hearing on the pending motions was held on December 10, 2010, at which time defense counsel reported that the Plaintiffs are currently being considered for a HAMP modification and the eviction proceedings are on hold until that determination is made.

**III. Motion to Dismiss**

  **A. Legal Standard**

To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007). In considering the merits of a motion to dismiss, the Court may look only to the facts alleged in the pleadings, documents attached as exhibits or incorporated by reference in the complaint and matters of which judicial notice can be taken. Nollet v. Justices of the Trial Court of

Mass., 83 F. Supp. 2d 204, 208 (D. Mass. 2000), aff'd, 248 F.3d 1127 (1st Cir. 2000). Furthermore, the Court must accept all factual allegations in the complaint as true and draw all reasonable inferences in the plaintiff's favor. Langadinos v. Am. Airlines, Inc., 199 F.3d 68, 69 (1st Cir. 2000). If the facts in the complaint are sufficient to state a cause of action, a motion to dismiss the complaint must be denied. See Nollet, 83 F. Supp. 2d at 208.

Although a court must accept as true all of the factual allegations contained in a complaint, that doctrine is not, however, applicable to legal conclusions. Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009). Threadbare recitals of the legal elements, supported by mere conclusory statements, do not suffice to state a cause of action. Id. Accordingly, a complaint does not state a claim for relief where the well-pled facts fail to warrant an inference of any more than the mere possibility of misconduct. Id. at 1950.

**B.  Third Party Breach of Contract (Count II)**

In Count II, for third-party breach of contract, the Plaintiffs assert that BAC violated its Servicer Agreement with Fannie Mae. The Servicer Agreement provides that BAC will abide by Fannie Mae's Guidelines, including the HAMP Guidelines. The HAMP Guidelines prohibit a servicer from foreclosing on a homeowner whose mortgage is owned by Fannie Mae before the

homeowner has been evaluated for a HAMP loan modification. HAMP Guidelines, VII, 610.04.04. The Defendants move to dismiss this count, arguing that the Plaintiffs lack standing to bring a third party breach of contract claim against BAC.

**1. Legal Standard**

Federal law controls the interpretation of the HAMP contract because one party to that contract is the United States. Hammonds v. Aurora Loan Servs. LLC, No. EDCV 10-1025 AG, 2010 WL 3859069, at *2 (C.D. Cal. Sept. 27, 2010). Under federal common law, only intended beneficiaries may enforce a contract. Id. Federal courts apply the Restatement (Second) of Contracts (1981) test to determine whether a third party is an intended beneficiary of a promise. Davis v. United Air Lines, Inc., 575 F. Supp. 677, 680 (E.D.N.Y. 1983). There is a presumption that beneficiaries of government contracts are incidental beneficiaries. Klamath Water Users Protective Ass'n v. Patterson, 204 F.3d 1206, 1211 (9th Cir. 1999), opinion amended on denial of reh'g, 203 F.3d 1175 (9th Cir. 2000) ("Klamath"). Section 313 of the Restatement (Second) of Contracts provides that a party is an intended third-party beneficiary to a government contract only if:

> (a) the terms of the promise provide for such liability; or (b) the promisee is subject to liability to the member of the public for the damages and a direct action against the promisor is consistent with the terms of the contract and with the policy of the law authorizing the contract and prescribing remedies for its breach.

Restatement (Second) of Contracts § 313.  Indications that a third-party action concerning a government contract is inappropriate include:

> [the existence of] arrangements for governmental control over the litigation and settlement of claims, the likelihood of impairment of service or of excessive financial burden, and the availability of alternatives such as insurance.

Restatement (Second) of Contracts § 313 cmt. a.

### 2. Application

The question of whether borrowers can bring third-party breach of contract actions against their lenders in order to enforce the HAMP Guidelines has not been decided by the First Circuit.  Most federal courts which have addressed that question have held that a borrower does not have standing under HAMP to bring a third-party beneficiary claim.  See, e.g., Zeller v. Aurora Loan Servs., LLC, No, 3:10cv00044, 2010 U.S. Dist. LEXIS 80449, at *2 (W.D. Va. Aug. 10, 2010); Zendejas v. GMAC Wholesale Mortg. Corp., No. 1:10-CVV-00184 OWW GSA, 2010 U.S. Dist. LEXIS 59793 (E.D. Cal. June 16, 2010).  Additionally, in a recent case in the District of Massachusetts, Magistrate Judge Judith Dein dismissed a borrower's third-party breach of contract claim because he was not an intended third-party beneficiary of the HAMP Servicer Agreement between his servicer and Fannie Mae. McKensi v. Bank of Am., N.A., No. 09-11940-JGD, 2010 U.S. Dist.

LEXIS 99540, at *14-15 (D. Mass. Sept. 22, 2010). At least one federal court has held to the contrary, however. Marques v. Wells Fargo Home Mortg., Inc., No. 09-cv-1985-L, 2010 U.S. Dist. LEXIS 81879, at *19 (S.D. Cal. Aug. 12, 2010).

Neither the HAMP Guidelines nor the Servicer Agreement states any intent to give borrowers a right to enforce a servicer's obligations under the HAMP Guidelines. Marks v. Bank of Am., No. 10-8039, 2010 U.S. Dist. LEXIS 61489, at *11 (D. Ariz. June 22, 2010). Thus, section 313(a) of the Restatement (Second) of Contracts is inapplicable and the Court will analyze the Plaintiffs' claim under section 313(b). Section 313(b) requires a showing that the Plaintiffs were intended to benefit from the contract and that third-party beneficiary claims are consistent with the terms of the contract and the policy underlying it.

### a. Intent

The Defendants maintain that the Plaintiffs have failed to cite any contract terms in the Servicer Agreement suggesting that the Plaintiffs were intended to be third-party beneficiaries. As the Plaintiffs indicate, however, the purpose of HAMP is to help homeowners avoid foreclosure by obtaining loan modification:

> Under the Treasury Department's (Treasury) Home Affordable Modification Program (HAMP), servicers will use a uniform loan modification process to provide eligible borrowers with sustainable monthly payments. All servicers must participate in HAMP for all eligible mortgage loans held in Fannie Mae's portfolio[.]

<u>U.S. Dep't of the Treasury, Home Affordable Modification Program Guidelines</u>, § VII, 610 (Mar. 4, 2009). The Fannie Mae Announcement 09-05R that the Plaintiffs quote in their brief but do not include as an exhibit states:

> On February 18, 2009, President Obama announced the Homeowner Affordability and Stability Plan to help up to 7 to 9 million families restructure or refinance their mortgage loans to avoid foreclosure. As part of this plan, the Treasury Department (Treasury) announced a national modification program aimed at helping 3 to 4 million at-risk homeowners – both those who are in default and those who are at imminent risk of default – by reducing monthly payments to sustainable levels.

<u>Fannie Mae Announcement 09-05R</u>, May 15, 2009, at 1. Indeed, the HAMP program is clearly intended to benefit qualified borrowers.

In cases dealing with different kinds of government contracts, Courts have afforded plaintiffs third-party beneficiary status under circumstances that are similar to those at issue in this case. For example, in <u>Miree</u> v. <u>DeKalb County</u>, the United States Supreme Court allowed the passengers in an aircraft crash to bring a claim against a municipality as third-party beneficiaries to a contract between the municipality and the Federal Aviation Administration. 433 U.S. 25, 28-29 (1977). The municipality violated that contract by maintaining an unsafe garbage dump near the airport. <u>Miree</u> v. <u>United States</u>, 526 F.2d 679, 681 (5th Cir. 1976), <u>rev'd, in part, on reh'g</u>, 538 F.2d 643, <u>reh'g vacated</u>, 433 U.S. at 28-29. The Supreme Court affirmed the

Fifth Circuit's holding that Georgia law, which follows the Restatement (Second) of Contracts, allowed the passengers to sue the municipality as third-party beneficiaries because the contract was intended to make the airport safe for the use and benefit of the public.  Miree, 433 U.S. at 28-29 (vacating the Fifth Circuit's en banc decision and affirming its initial holding in Miree, 526 F.2d at 685-86).

Additionally, in Ayala v. Boston Housing Authority, the Massachusetts Supreme Judicial Court ("SJC") held that minor children who were victims of lead poisoning in Section 8 housing could sue the Boston Housing Authority ("BHA") as third-party beneficiaries to the BHA's contracts with the United States Department of Housing and Urban Development ("HUD").  536 N.E. 2d 1082, 1088 (Mass. 1989).  The SJC found that the primary purpose of that contract was to benefit the residents of Section 8 public housing by providing safe housing.  Id.

With respect to the HAMP Guidelines at issue in this case, the United States District Court for the Southern District of California has held that the plaintiff borrower may be able to state a claim against the defendant lender as an intended third-party beneficiary of the Servicer Contract between the lender and Fannie Mae.  Marques, 2010 U.S. Dist. LEXIS 81879, at *19.  The Court reasoned that, because servicers are required to perform specific foreclosure prevention services described in the HAMP

Guidelines, the borrowers who benefit are intended third-party beneficiaries. Id. at *5-6. Thus, there is a plausible argument that borrowers such as the Plaintiffs are intended third-party beneficiaries under the HAMP Guidelines.

> **b.    Consistency with the Terms of the Contract**

Despite colorable arguments in favor of affording borrowers third-party beneficiary status, third-party beneficiary claims must be consistent with the terms of the contract. Restatement (Second) of Contracts, § 311(b). In Klamath, the Ninth Circuit held that a contract can be intended to benefit a party without giving that party the right to enforce the contract. 204 F.3d at 1212. The contract in Klamath was between the United States Bureau of Reclamation and the California Oregon Power Company for the construction of a dam. Id. at 1209. The plaintiffs were irrigators with contractual rights to water flow from the river that was dammed. The Ninth Circuit held that, although the plaintiffs were meant to benefit from the contract, they were not intended third-party beneficiaries because the contract specifically set forth the intended beneficiaries, not including the plaintiffs. Id. at 1212.

Many of the HAMP cases have cited Klamath to the same effect. In Escobedo v. Countrywide Home Loans, Inc., for example, the United States District Court for the Southern District of California reasoned that, although qualified

-11-

borrowers are meant to benefit from the HAMP program, the Servicer Agreement is devoid of any intent to grant qualified borrowers the right to enforce the Agreement.  NO. 09cv1557 BTM, 2009 U.S. Dist. LEXIS 117017, at *6 (S.D. Cal. Dec. 15, 2009).

Thus, despite a colorable argument to the contrary, the terms of the Servicer Agreement are dispositive.  Section XIV, the "Severability and Enforcement" clause provides that: "These rights and remedies are for our benefit and that of our successors and assigns."  Fannie Mae Single Family/Mortgage Selling & Servicing Contract, § XIV.  The Plaintiffs' third-party breach of contract claim against BAC is, therefore, precluded.

At oral argument, the Plaintiffs asserted that the intent to benefit borrowers expressed throughout the HAMP Guidelines trumps the Enforcement clause.  The Court disagrees because, as a general proposition, public citizens are not intended third-party beneficiaries to government contracts despite the fact that such contracts are usually intended to benefit the public in some way. See Klamath, 204 F.3d at 1211.  Without any specific statement in the Servicer Agreement or the HAMP Guidelines that borrowers may enforce a servicer agreement through breach of contract actions, this Court finds that the plaintiffs have not stated a claim for breach of a third-party contract.  Count II will, therefore, be dismissed.

**C. Negligence (Count I)**

To state a claim for negligence, the plaintiff must allege that the defendant 1) owed a legal duty to the plaintiff, 2) breached that duty and 3) was the proximate or legal cause of 4) actual damage or injury. Jorgensen v. Mass. Port Auth., 905 F.2d 515, 522 (1st Cir. 1990). The Plaintiffs argue that the Defendants' violation of the HAMP Guidelines constitutes evidence of negligence because, under those Guidelines, the Defendants had a duty not to foreclose until they had been evaluated for a modification. The HAMP Guidelines include the following provision:

> To ensure that a borrower currently at risk of foreclosure has the opportunity to apply for HAMP, servicers should not proceed with a foreclosure sale until the borrower has been evaluated for the program and, if eligible, an offer to participate in HAMP has been made.

U.S. Dep't of the Treasury, Home Affordable Modification Program Guidelines, § VII, 610.04.04. The Plaintiffs allege that they were in the process of applying for a modification when the sale occurred and that they were eligible for consideration for a loan modification.

The Defendants maintain that, because there is no private cause of action under HAMP, such a claim cannot be brought as a common law negligence claim. Indeed, federal courts have held that there is no private right of action under HAMP. See, e.g., Hart v. Countrywide Home Loans, Inc., 2010 U.S. Dist. LEXIS

-13-

85272, at *13-14 (E.D. Mich Aug. 19, 2010); Hoffman v. Bank of Am., 2010 U.S. Dist. LEXIS 70455, at *6 (N.D. Cal. June 30, 2010).

Notwithstanding Plaintiffs' contention to the contrary, the Court agrees with the defendant, but that is not dispositive of the issue because, in Massachusetts, violations of a statute or regulation may constitute evidence of negligence. Berish v. Bornstein, 770 N.E. 2d 961, 979 (Mass. 2002). A claim for negligence based on a statutory or regulatory violation can survive even where there is no private cause of action under that statute or regulation. See, e.g., Practico v. Portland Terminal Co., 783 F.2d 255, 265 (1st Cir. 1985) (finding that plaintiffs could bring a negligence per se claim based on a violation of Occupational Safety and Health Act even though the statute did not provide a private cause of action); Sorenson v. H&R Block, Inc., No. 99-cv-10268-DPW, 2002 U.S. Dist. LEXIS 18689, at *29 (D. Mass. Aug. 27, 2002).

Here, evidence of a violation of the HAMP Guidelines may constitute evidence of breach of a duty because the harm that the Plaintiffs allegedly incurred is of the kind that the Guidelines were designed to prevent and the Plaintiffs are within the class of persons that the Guidelines are intended to benefit. See Sorenson, 2002 U.S. Dist. LEXIS 18689, at *30. Thus, the Plaintiffs have stated a plausible negligence claim.

The Defendants argue that they, as lenders, do not owe a duty of care to their borrowers under HAMP. The cases that the Defendants cite, however, are brought under different theories of negligence than the instant action and are inapposite. See Blais v. Warren Five Cents Sav. Bank, No. 9218, 1993 Mass. App. Div. LEXIS 82, at *4-5 (Mass. App. Div. Nov. 22, 1993) (basing negligence claim on alleged fiduciary duty of lender); In re Fordham, 130 B.R. 632, 646 (Bankr. D. Mass 1991) (basing negligence claim on alleged duty of lender to use reasonable care in preparation and offering of a loan proposal); Pimental v. Wachovia Mortg. Corp., 411 F. Supp. 2d 32, 39-40 (D. Mass. 2006) (basing negligence claim on alleged fiduciary duty of mortgagee).

### D. Violation of the Covenant of Good Faith and Fair Dealing (Count III)

The covenant of good faith and fair dealing, which is implied in every contract in Massachusetts, requires parties to a contract "to deal honestly and in good faith in both the performance and enforcement of the terms of their contract[.]" Hawthorne's, Inc. v. Warrenton Realty, Inc., 606 N.E. 2d 908, 914 (Mass. 1993).

The Defendants maintain that the Plaintiffs have no claim for a breach of the covenant of good faith and fair dealing based on a violation of the HAMP Guidelines because that cause

of action cannot be used to enforce rights or duties that are not found in the contract. See McKensi, 2010 U.S. Dist. LEXIS 99540, at *13-14. The Plaintiffs respond that, under their Mortgage and Note contracts with the Defendants, they have the right to avoid foreclosure by reinstating their mortgage and that they could have done so with a HAMP loan modification. As the Defendants point out, however, they had no obligation in the Note or the Mortgage to modify the loan. Moreover, both documents were drafted before the HAMP Guidelines and, therefore, cannot be said to incorporate them.

Because the Plaintiffs rely only on the alleged violation of the HAMP Guidelines and have not alleged the breach of any specific provision in their contract with the Defendants, the Court will allow the motion to dismiss on Count III.

### E. Violation of the Fair Debt Collection Practices Act (Count IV)

The Defendants provide no argument that this claim should be dismissed and, therefore, the Court will deny the Defendants' motion to dismiss that claim.

## IV. Motion for Lis Pendens

### A. Legal Standard

In Massachusetts, the issuance of a memorandum of lis pendens is governed by M.G.L. c. 184, § 15. A memorandum of lis pendens is simply a notice recorded in the chain of title to

real property warning all persons that such property is the subject matter of litigation and that any interests acquired during the pendency of the suit are subject to its outcome. See id. Section 15(b) provides that the Court shall endorse such a memorandum if it finds that

> the subject matter of the action constitutes a claim of right to title to real property or the use and occupation thereof or the buildings thereon.

M.G.L. c. 184, § 15(b). It is the nature of the claim that determines whether a lis pendens may issue, not the merits of that claim. Sutherland v. Aolean Dev. Corp., 502 N.E. 2d 528, 531 (Mass. 1987).

**B. Application**

Although the motion for issuance of a memorandum of lis pendens was filed ex parte, the Defendants' motion to dismiss addresses the Plaintiff's motion which will not, therefore, be treated as ex parte.

The Plaintiffs seek relief pursuant to their claims in the form of an order rescinding the foreclosure sale of the Property and restoring title to them. Thus, the subject matter of the action constitutes a "claim of right to title" to the Property and the Plaintiffs' motion for issuance of a memorandum of lis pendens will be allowed.

## ORDER

In accordance with the foregoing,

1) the defendants' motion to dismiss (Docket No. 17) is with, respect to Counts II and III, **ALLOWED** but, with respect to Counts I and IV, **DENIED**; and

2) the plaintiffs' ex parte motion for a memorandum of lis pendens (Docket No. 2) is **ALLOWED**.

**So ordered.**

/s/ Nathaniel M. Gorton
Nathaniel M. Gorton
United States District Judge

Dated December 14, 2010