UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

DELYNN J. SPELEOS and
JESSE S. SPELEOS

      Plaintiffs

v.

BAC HOME LOANS SERVICING, LP,
FEDERAL NATIONAL
MORTGAGE ASSOCIATION, and
ORLANS MORAN, PLLC

      Defendants

C.A. No. 1:10-cv-11503-NMG

**LEAVE TO FILE GRANTED ON
MARCH 4, 2011**

**FIRST AMENDED COMPLAINT**

**Summary**

1. Plaintiffs, consumer homeowners, seek the rescission of the foreclosure sale of their home. Defendants conducted the sale while Plaintiffs were under consideration for a loan modification. This violated the mortgage-servicing guidelines issued by defendant Fannie Mae and agreed to by defendant Bank of America. Plaintiffs file this suit for negligence, breach of contract, violation of the duty of good faith and fair dealing, violation of the Fair Debt Collection Practices Act, and violation of the Massachusetts Consumer Protection Act.

**Federal Jurisdiction**

2. Jurisdiction over Counts I, II, and III, Plaintiffs' state-law claims, is invoked pursuant to this Court's supplemental jurisdiction under 28 U.S.C. § 1367.

3. Jurisdiction over Count IV is invoked pursuant to the Fair Debt Collection Practices Act, 15 U.S.C. § 1692k.

4. Declaratory relief is available pursuant to 28 U.S.C. §§ 2201 and 2202.

5. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) in that the Defendants transact business in this District and a substantial portion of the acts giving rise to this action occurred in this District.

## Parties

6. Jesse S. Speleos and Delynn J. Speleos ("Mr. Speleos" and "Ms. Speleos" respectively, and "Plaintiffs" or "the Speleoses" collectively), husband and wife, are natural persons residing at 750 Whittenton St. #1022, Taunton, Bristol County, Massachusetts 02780.

7. BAC Home Loans Servicing, L.P. ("BAC"), doing business as Bank of America Home Loans, is a Texas limited partnership with principal offices located at 6400 Legacy Dr., Plano, Texas 75024. BAC is a wholly owned subsidiary of Bank of America, N.A. BAC regularly does business in the District of Massachusetts. BAC is in the business of servicing consumer mortgages. At all times relevant, BAC was acting individually and on behalf of the Federal National Mortgage Association.

8. The Federal National Mortgage Association ("Fannie Mae") is a government-sponsored enterprise with principal offices located at 3900 Wisconsin Avenue, N.W., Washington, D.C. 20016. Fannie Mae is in the business of investing in mortgages.

9. Orlans Moran, PLLC ("Orlans") is a Michigan limited-liability company with principal offices located at 1650 Big Beaver Rd., Troy, Michigan 48084, and with offices in Massachusetts at 45 School St., 2nd Floor, Boston, Massachusetts 02108. At all times relevant, Orlans was acting individually and on behalf of BAC and Fannie Mae.

## General Allegations

10. The Speleoses purchased their home in 2007 for the amount of $175,000. The purchase was financed with a loan from Stonebridge Mortgage Company in the same amount, secured by a mortgage in favor of Mortgage Electronic Registration Systems, Inc.

11. The Speleoses' mortgage was owned by Fannie Mae. BAC was the servicer of Plaintiffs' mortgage, conducting collection activities on behalf of Fannie Mae and transmitting payments to Fannie Mae.

12. In approximately November 2009, Mr. Speleos, a painter, became unemployed. He presently receives unemployment benefits.

13. Ms. Speleos is gainfully employed full-time as a data entry clerk.

14. The Speleoses have been attempting to modify their loan since March 2010 through the federal loan modification program called the Home Affordable Modification Program ("HAMP").

15. HAMP reduces the monthly mortgage payments of borrowers in accordance with set guidelines promulgated by Fannie Mae and the U.S. Department of the Treasury. HAMP is part of the Troubled Asset Relief Program, under which banks such as BAC have received billions of taxpayer dollars.

16. BAC is obligated to follow mortgage servicing guidelines, including HAMP guidelines, issued by Fannie Mae, pursuant to BAC's mortgage-servicing contract with Fannie Mae.[1]

17. Ms. Speleos requested loan modification application packages for HAMP numerous times from BAC beginning in March 2010. BAC did not send out an application package until July 16, 2010.

18. When Ms. Speleos finally received the loan modification application from BAC, she promptly completed it and submitted it to BAC on July 1, 2010.

19. BAC received the loan modification application package from Ms. Speleos on July 6, 2010. (**Exhibit A.**)

20. BAC requested additional financial documents from the Speleoses on July 14, 2010, which Ms. Speleos immediately faxed on the same day.

21. On July 15, 2010, Ms. Speleos called BAC to confirm that her July 14, 2010 had been received. BAC reported that it lost her fax, so Ms. Speleos re-faxed the information again the same day.

22. The Speleoses' modification application was complete on July 15, 2010.

23. On July 1, 2010, BAC, by its attorneys at Orlans, scheduled the foreclosure sale of the Speleoses' home for August 5, 2010.

---

[1] The Fannie Mae mortgage-servicing contract is available online at https://www.efanniemae.com/sf/guides/ssg/#ssg, and is incorporated by reference into this Complaint.

24. Pursuant to HAMP program guidelines, **a foreclosure must be cancelled once a homeowner has applied for HAMP**.[2]

25. Pursuant to HAMP program guidelines, **a mortgage may not be referred to foreclosure if a homeowner has not been given an opportunity to apply for HAMP**.[3]

26. Despite receiving the Speleoses' completed HAMP application on July 6 and July 16, 2010, BAC and Fannie Mae refused to cancel the foreclosure of the Speleoses' home.

27. Ms. Speleos called BAC numerous times requesting that the foreclosure be cancelled due to her submitted loan modification application. BAC, acting individually and on behalf of Fannie Mae, repeatedly refused to cancel the sale.

28. In late July 2010, Ms. Speleos contacted the Making Home Affordable Help Center, a supervisory organization connected with the HAMP program, for assistance with cancelling the foreclosure sale of the Speleoses' home, which was still scheduled for August 5, 2010.

29. During the above call to the MHA Help Center, a MHA representative made a conference call with Ms. Speleos to BAC to demand cancellation of the foreclosure.

30. During the call, the MHA representative informed the BAC representative that BAC was violating the terms of the HAMP program. Nevertheless, the BAC representative refused to cancel the foreclosure and stated that BAC did not intend to stop the foreclosure.

---

[2] *See, e.g.*, Frequently Asked Questions – Fannie Mae Servicing Guide Announcement 09-05R, February 25, 2010, p.3 (stating "To ensure that a borrower currently in foreclosure or at risk of foreclosure has the opportunity to apply for a HAMP modification, servicers should not proceed with a foreclosure sale until the borrower has been evaluated for the program") available online at https://www.efanniemae.com/sf/guides/ssg/relatedservicinginfo/pdf/hampfaqs.pdf, and incorporated by reference into this Complaint.

[3] *See, e.g.*, Frequently Asked Questions – Fannie Mae Servicing Guide Announcement 09-05R, February 25, 2010, p.2 (stating "Foreclosure actions ... including initiation of new foreclosure actions, must be postponed for all borrowers that meet the minimum HAMP eligibility criteria") available online at https://www.efanniemae.com/sf/guides/ssg/relatedservicinginfo/pdf/hampfaqs.pdf, and incorporated by reference into this Complaint.

31. During the call, the MHA representative requested to speak with a supervisor. The BAC representative stated that there was no supervisor and there was no one else who could help.

32. Ms. Speleos also called Orlans, foreclosure counsel for BAC and Fannie Mae, in late July or early August and told an Orlans representative that the Speleoses' home was scheduled to be sold in violation of HAMP guidelines.

33. Orlans refused to cancel the foreclosure sale despite the uncontroverted information from Ms. Speleos that the auction was being conducted in violation of HAMP guidelines.

34. On August 5, 2010, the day of the foreclosure sale, Ms. Speleos again called BAC and requested that the sale be postponed. A BAC representative stated that Ms. Speleos that she could still modify the loan after the sale.

35. The foreclosure sale of the Speleoses' home was conducted on August 5, 2010 by BAC, Fannie Mae, and Orlans.

36. At the foreclosure auction on August 5, 2010, BAC was the purchaser of the Speleoses' home for $148,802.69.

37. On or about August 10, 2010, BAC assigned its bid to Fannie Mae, and Fannie Mae is the present owner of the Speleos' home.

38. On information and belief, the Defendants are now attempting to remove the Speleoses from their home through eviction or other means.

39. The Speleoses are concerned that a third party will be able to purchase their home if the Defendants are not prevented from conveying it again, and the sale will not be rescindable.

**Count I:**
**Negligence**
**(BAC, Fannie Mae, and Orlans)**

40. The preceding allegations are incorporated by reference.

41. The HAMP guidelines are, as a matter of law, the industry standard for the
residential mortgage servicing industry:

> STANDARD INDUSTRY PRACTICE.—The qualified loss
> mitigation plan guidelines [i.e., HAMP] issued by the
> Secretary of the Treasury under the Emergency
> Economic Stabilization Act of 2008 shall constitute
> **standard industry practice** for purposes of all Federal
> and State laws.

Helping Families Save Their Homes Act of 2009, Pub. L. No. 111-22 (2009), §
201 (emphasis added). (Attached in part as **Exhibit B**.)

42. The above section creates a duty on the part of mortgage servicers, investors,
and their agents to follow HAMP guidelines.

43. Under HAMP guidelines, a homeowner may not be foreclosed on while being
evaluated for a loan modification.[4]

44. Under HAMP guidelines, a foreclosure must be cancelled if a homeowner has
applied for a HAMP loan modification.[5]

45. BAC, Fannie Mae, and Orlans had a duty to not foreclose on the Speleoses when
they were under consideration for a HAMP modification.

---

[4] *See, e.g.*, Frequently Asked Questions – Fannie Mae Servicing Guide
Announcement 09-05R, February 25, 2010, p.3 (stating "To ensure that a borrower
currently in foreclosure or at risk of foreclosure has the opportunity to apply for a
HAMP modification, servicers should not proceed with a foreclosure sale until the
borrower has been evaluated for the program") available online at
https://www.efanniemae.com/sf/guides/ssg/relatedservicinginfo/pdf/hampfaqs.p
df, and incorporated by reference into this Complaint.

[5] *See, e.g.*, Frequently Asked Questions – Fannie Mae Servicing Guide Announcement
09-05R, February 25, 2010, p.2 (stating "Foreclosure actions (with the exception of
those in Georgia, Hawaii, Missouri and Virginia), including initiation of new
foreclosure actions, must be postponed for all borrowers that meet the minimum HAMP
eligibility criteria") available online at
https://www.efanniemae.com/sf/guides/ssg/relatedservicinginfo/pdf/hampfaqs.pdf,
and incorporated by reference into this Complaint.

46. BAC, Fannie Mae, and Orlans, in disregard of their duty, foreclosed on the Speleoses' home while the Speleoses were under consideration for a HAMP modification.

47. As a direct and proximate result of the negligence, BAC, Fannie Mae, and Orlans caused damage to the Speleoses, including but not limited to causing them to lose title to their home.

## Count II:
### Third-Party Breach of Contact
### (BAC)

48. The preceding allegations are incorporated by reference.

49. BAC and Fannie Mae have a contract under which BAC agrees to service residential mortgage loans (the "Servicing Contract").

50. Under the Servicing Contract, BAC has agreed not to foreclose on any homeowner whose mortgage is owned by Fannie Mae unless the homeowner has first been evaluated for HAMP.

51. Under the Servicing Contract, BAC has promised not to foreclose on any homeowner whose mortgage is owned by Fannie Mae while the homeowner is under consideration for HAMP.

52. The Servicing Contract unambiguously directs BAC to modify loans, identifies criteria to determine which loans are eligible for modification, and specifies how to modify those loans.[6]

53. The Speleoses are intended third-party beneficiaries of the Servicing Contract.

54. Fannie Mae performed its promises under the Servicing Contract.

55. BAC breached the Servicing Contract, violated its promise not to foreclose on homeowners, the Speleoses, while they were under consideration for a HAMP loan modification and before they had been evaluated for a HAMP loan modification.

---

[6] *See, e.g.*, Fannie Mae Servicing Guide, Part VII, § 610.01, available online at https://www.efanniemae.com/sf/guides/ssg/#ssg, and incorporated by reference into this Complaint.

56. As a direct and proximate result of BAC's breach of contract, BAC caused damage to the Speleoses, including but not limited to causing them to lose title to their home.


## Count III:
## Violation of Duty of Good Faith and Fair Dealing
## (BAC and Fannie Mae)

57. The preceding allegations are incorporated by reference.

58. In every contract, there is an implied duty to deal honestly and in good faith in both the performance and enforcement of the terms of their contract, which duty extends to intended third party beneficiaries of that contract.


59. BAC and Fannie Mae violated their duty of good faith and fair dealing with respect to the Speleoses' mortgage contract and promissory note by foreclosing on the Speleoses' home before they had been considered for a loan modification under HAMP, and while the Speleoses were under consideration for a loan modification under HAMP.

60. As a direct and proximate result of this violation, BAC and Fannie Mae caused damage to the Speleoses, including but not limited to causing them to lose title to their home.


## Count IV:
## Fair Debt Collection Practices Act, 15 U.S.C. § 1692k
## (Orlans)

61. The preceding allegations are incorporated by reference.

62. Orlans regularly uses the mail and telephone to attempt to collect debts from consumers, which debts are owed or alleged to be owed to third parties.

63. Specifically, Orlans conducts collection activities on behalf of mortgage companies with respect to consumer debts.

64. Orlans is a "debt collector" as defined by the FDCPA, 15 U.S.C. § 1692a(6).

65. The Speleoses' mortgage and promissory note are "debts" as defined by the FDCPA, 15 U.S.C. § 1692a(6).

66. Orlans violated the FDCPA with respect to the Speleoses. Its violations include, but are not limited to, the following.

*First FDCPA Violation*

67. Under the FDCPA, 15 U.S.C. § 1692f, a debt collector "[m]ay not use unfair or unconscionable means to collect or attempt to collect any debt."

68. Orlans violated the above section of the FDCPA by foreclosing on the Speleoses' home when they were under consideration for a loan modification under HAMP.

69. Orlans violated the above section of the FDCPA by conducting foreclosure-related collection activity not authorized by Fannie Mae loan servicing guidelines.

70. Orlans violated the above section of the FDCPA by foreclosing on the Speleoses' home when Orlans had actual knowledge, from Ms. Speleos's phone call to Orlans, that the foreclosure was proceeding in violation of HAMP guidelines.

*Second FDCPA Violation*

71. Under the FDCPA, U.S.C. § 1692f(6), a debt collector may not "Tak[e] or threaten[] to take any nonjudicial action to effect dispossession or disablement of property if ... there is no present right to possession of the property claimed as collateral through an enforceable security interest."

72. Orlans violated the above section of the FDCPA by conducting the foreclosure of the Speleoses' home despite there being no right to do so, since the foreclosure was illegal as an unfair and deceptive trade practice.

73. As a direct and proximate result of the foreclosure, Orlans caused damage to the Speleoses, including but not limited to causing them to lose title to their home.

**Count V:**
**Consumer Protection Act, M.G.L. c. 93A**
**(BAC and Fannie Mae)**

74.     Plaintiffs incorporate the preceding paragraphs by reference.

75.     Plaintiffs file this claim as consumer homeowners. They are not entitled to bring
their claims under M.G.L. c. 93A, § 11.

76.     BAC Home Loans Servicing, LP (BAC) is engaged in trade or commerce in
Massachusetts by, among other things, servicing residential mortgage loans,
including the mortgage that was on the Plaintiffs' principal residence.

77.     The Federal National Mortgage Association (Fannie Mae) is engaged in trade or
commerce in Massachusetts by purchasing mortgages and directing mortgage
servicing activities of servicers such as BAC.

78.     BAC and Fannie Mae engaged in unfair or deceptive acts or practices with
respect to the Plaintiffs as described herein, throughout their Complaint, and in
their demand letter.

79.     Plaintiffs, by counsel, sent a demand letter to BAC and Fannie Mae on December
17, 2010 describing the unfair acts and practices and demanding relief for their
injuries. (**Exhibit C – Demand Letter**.)

80.     In their demand letter, Plaintiffs described the circumstances of the foreclosure
of their home, including their allegation that BAC and Fannie Mae conducted the
foreclosure while the Speleoses were under consideration for a loan
modification, in violation of the guidelines for the Home Affordable
Modification Program.

81.     BAC and Fannie Mae jointly responded to Plaintiffs' demand letter on January
17, 2011. (**Exhibit D – Response to Demand Letter**.)

82.     In the response to the demand letter, BAC and Fannie Mae did not make a
reasonable settlement offer. Instead, the response stated that BAC and Fannie
Mae "[d]eny they have violated the substantive standards of M.G.L. c. 93A, §2,
and will defend the matter vigorously ...."

83.     The wrongful foreclosure by BAC and Fannie Mae of Plaintiffs' home was willful
and knowing because BAC had actual knowledge, from phone calls made by
Plaintiffs, that it was being conducted in violation of HAMP guidelines.

84.     Furthermore, the refusal of BAC and Fannie Mae to make a settlement offer in
response to Plaintiffs' demand letter was done in bad faith.

85.   Plaintiffs have been damaged by BAC and Fannie Mae's foreclosure of their home, including but not limited to the loss of title to the real property that is their home.


WHEREFORE, Plaintiffs request judgment in their favor and against defendants BAC and Fannie Mae, as well as the following relief:

A.   Cancellation and rescission of the foreclosure sale of Plaintiffs' home;

B.   An Order that BAC and Fannie Mae timely evaluate Plaintiffs' for a loan modification consistent with the Home Affordable Modification Program and provide one if they are eligible;

C.   Their actual damages;

D.   Treble damages for BAC and Fannie Mae's knowing and willful violation of M.G.L. c. 93A, as well as for their failure to make a reasonable offer in settlement in response to Plaintiffs' demand letter;'

E.   As a result of Orlans's FDCPA violations, an award of actual damages, statutory damages, attorney's fees, and costs;

F.   Costs, interest, and attorney's fees; and

G.   All other relief this to which they may be entitled at law or in equity.

Respectfully submitted,

Plaintiffs,
Delynn and Jesse Speleos,
By counsel,

/s/ Josef Culik
Josef Culik (BBO #672665)
Culik Law PC
100 Cummings Center
Suite 107K
Beverly, MA 01915
978-910-0248
josef@culiklaw.com

March 4, 2011

**CERTIFICATE OF SERVICE**

I certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants on March 4, 2011.

/s/ Josef Culik
Josef Culik