## United States District Court
## District of Massachusetts

```
_____
                                  )
DELYNN J. SPELEOS and JESSE S.    )
SPELEOS,                          )
         Plaintiffs,              )
                                  )    Civil Action No.
         v.                       )    10-11503-NMG
                                  )
BAC HOME LOANS SERVICING, L.P.,   )
d/b/a BANK OF AMERICA HOME        )
LOANS, FEDERAL NATIONAL MORTGAGE  )
ASSOCIATION, d/b/a FANNIE MAE     )
and ORLANS MORAN, PLLC,           )
         Defendants.              )
_____       )
```

### MEMORANDUM & ORDER

**GORTON, J.**

Plaintiffs Delynn J. and Jesse S. Speleos bring suit against BAC Home Loans Servicing, L.P., d/b/a Bank of America Home Loans ("BAC"), Federal National Mortgage Association ("Fannie Mae") and OrlansMoran, PLLC ("OrlansMoran"). Plaintiffs sue all defendants for negligence (Count I), BAC for third-party breach of contract (Count II), BAC and Fannie Mae for a violation of the duty of good faith and fair dealing (Count III), OrlansMoran for a violation of the Fair Debt Collection Practices Act, 15 U.S.C. § 1692k (Count IV), and BAC and Fannie Mae for a violation of the Consumer Protection Act, Mass. Gen. Laws Ch. 93A ("Chapter 93A") (Count V).

Before the Court are the joint motion to dismiss of defendants BAC and Fannie Mae and defendant OrlansMoran's

-1-

separate motion to dismiss plaintiffs' First Amended Complaint. Plaintiffs have opposed both motions.

## I.   __Factual Background__

Generally, plaintiffs allege that defendants violated the Home Affordable Modification Program ("HAMP") Guidelines by conducting a foreclosure sale of their home while they were under consideration for a loan modification.

Plaintiffs purchased their home at 750 Whittenton Street, Unit 1022, Taunton, Massachusetts ("the Property") in October, 2007 for $175,900.  The purchase was financed with a loan from Stonebridge Mortgage Company for $175,900 that was secured by a mortgage in favor of Mortgage Electronic Registration Systems, Inc. ("MERS").  Fannie Mae owned the mortgage and BAC was the servicer.  In November, 2009, Mr. Speleos lost his job.  Although Ms. Speleos is employed, plaintiffs have been trying to modify their loan since March, 2010 pursuant to the HAMP program.

HAMP was created by Congress under the Emergency Economic Stabilization Act of 2008, Pub. L. No. 110-343, and is governed by Guidelines set forth by Fannie Mae and the United States Department of the Treasury.  Pursuant to the HAMP program, mortgage loan servicers enter into Servicer Participation Agreements with Fannie Mae that require the servicer to perform loan modification and foreclosure prevention services specified in the HAMP Guidelines.

-2-

Ms. Speleos requested a loan modification application from BAC in March, 2010 and received it on June 16, 2010.  She filled out the application and sent it to BAC on July 1, 2010.  BAC received the initial application on July 6, 2010, and, after Ms. Speleos provided additional requested financial information, her application was completed on July 15, 2010.

Meanwhile, on July 1, 2010, BAC, through its attorneys at OrlansMoran, scheduled a foreclosure sale of the Property for August 5, 2010.  In late July, 2010, after Ms. Speleos contacted the Making Home Affordable ("MHA") Help Center, an MHA representative informed BAC that it was violating the HAMP Guidelines and demanded cancellation of the foreclosure sale. The BAC representative refused to cancel the foreclosure or allow the MHA representative to speak with a supervisor.  Ms. Speleos also called BAC's counsel, OrlansMoran, and informed a representative that the foreclosure was scheduled in violation of the HAMP guidelines but OrlansMoran also refused to cancel the sale.  Finally, on the day of the foreclosure sale, Ms. Speleos again called BAC and requested the sale be postponed.  BAC refused but informed Ms. Speleos that she could still modify the loan after the sale.

On August 5, 2010, the Property was sold at a foreclosure auction for $148,803 to BAC.  The sale was conducted by BAC, Fannie Mae and OrlansMoran.  On August 10, 2010, BAC assigned its

-3-

purchase to Fannie Mae which is the current owner of the Property.

Plaintiffs claim that the foreclosure violated the HAMP Guidelines which provide that 1) a mortgage may not be referred to foreclosure if a homeowner has not been evaluated for a HAMP loan modification and 2) a foreclosure sale must be cancelled or postponed while the HAMP application is pending.  Plaintiffs allege that defendants are now attempting to evict them from the Property and that if defendants convey the Property they will be unable to regain ownership.

Plaintiffs seek: 1) the rescission of the foreclosure sale and restoration of title to them, 2) an order that BAC and Fannie Mae immediately consider a loan modification under HAMP for their loan or other alternatives to foreclosure, and 3) actual damages and treble damages for a knowing and willful violation of Chapter 93A, as well as costs, interest, and attorney's fees.

## II.  __Procedural History__

Plaintiffs filed their original complaint and a motion for a memorandum of _lis_ _pendens_ on September 1, 2010.  Defendant OrlansMoran filed a timely answer denying the claims against it, and, shortly thereafter, defendants BAC and Fannie Mae responded by filing a motion to dismiss.  The Court issued an order on December 14, 2010 which 1) allowed the motion to dismiss with respect to Counts II and III but denied it with respect to Counts

-4-

I and IV, and 2) allowed plaintiffs' motion for a memorandum of lis pendens.  Defendants BAC and Fannie Mae then answered the complaint.

In February, 2011, plaintiffs filed a stipulated motion to supplement their complaint pursuant to Fed. R. Civ. P. 15(d) to add an alleged violation of Chapter 93A against defendants BAC and Fannie Mae.  The Court allowed the motion but instructed the parties that the pleading should be docketed as the "First Amended Complaint" to replace (rather than supplement) the original complaint.  Plaintiffs then filed their amended complaint which re-stated their original Counts I through IV and added Count V for a violation of Chapter 93A.

Perhaps due to the title of the pleading or because the plaintiffs re-asserted in their amended complaint the claims that the Court had already dismissed, defendants BAC and Fannie Mae filed a motion to dismiss <u>all</u> claims against them in April, 2011, rather than just responding to the one added claim.  Similarly, defendant OrlansMoran filed a separate motion to dismiss all claims against it.  Plaintiffs oppose both motions.

III. **<u>Analysis</u>**

    A.   **Motion to Dismiss**

        1.   **Legal Standard**

To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to "state a claim to

relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007).  In considering the merits of a motion to dismiss, the Court may look only to the facts alleged in the pleadings, documents attached as exhibits or incorporated by reference in the complaint and matters of which judicial notice can be taken.  Nollet v. Justices of the Trial Court of Mass., 83 F. Supp. 2d 204, 208 (D. Mass. 2000), aff'd, 248 F.3d 1127 (1st Cir. 2000).  Furthermore, the Court must accept all factual allegations in the complaint as true and draw all reasonable inferences in the plaintiff's favor.  Langadinos v. Am. Airlines, Inc., 199 F.3d 68, 69 (1st Cir. 2000).  If the facts in the complaint are sufficient to state a cause of action, a motion to dismiss the complaint must be denied.  See Nollet, 83 F. Supp. 2d at 208.

Although a court must accept as true all of the factual allegations contained in a complaint, that doctrine is not applicable to legal conclusions.  Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009).  Threadbare recitals of the legal elements which are supported by mere conclusory statements do not suffice to state a cause of action.  Id.  Accordingly, a complaint does not state a claim for relief where the well-pled facts fail to warrant an inference of any more than the mere possibility of misconduct.  Id. at 1950.

> **2.     Third Party Breach of Contract (Count II) Against BAC and Violation of Duty of Good Faith and Fair Dealing (Count III) Against BAC and Fannie Mae**

Counts II and Count III in the First Amended Complaint are identical to the same numbered counts in the original complaint. Because Plaintiffs assert no additional or modified facts, the Court will dismiss those claims for the same reasons stated in its December 14, 2010 Order.

> **3.     Negligence (Count I) Against All Defendants**

Count I of the First Amended Complaint is also identical to Count I in the original complaint. Defendants BAC and Fannie Mae move to dismiss that claim for essentially the same reasons they originally opposed it. Defendants further alert the Court to a local federal district court case and a Massachusetts Superior Court case that have been decided since its December 14, 2010 Order. In defendants' view, those cases hold that a loan servicer has no duty to a borrower, but, because neither of those decisions is controlling here, this Court will deny defendants' motions for the same reasons articulated in its December 14, 2010 Order.

Count I is also brought against OrlansMoran, the law firm engaged by BAC to handle the foreclosure of the Property. Defendant OrlansMoran initially denied the allegations contained in Count I in its answer filed in September, 2010. It now moves to dismiss that claim pursuant to Fed. R. Civ. P. 12(b)(6),

arguing that 1) BAC and Fannie Mae were not negligent and 2) even
if they were negligent, OrlansMoran was not a party to the HAMP
agreement and has no relationship with plaintiffs that would
support a negligence claim.

Although the Court will allow plaintiffs' negligence claim
to proceed against BAC and Fannie Mae, it will dismiss that count
against OrlansMoran because the law firm owed no legal duty to
plaintiffs to support such a claim.

Plaintiffs do not allege that OrlansMoran was a party to the
HAMP contract or that there was any attorney-client relationship
between them.  Rather, their claim against OrlansMoran is
grounded in common-law negligence or agency principles.  They
contend that "a lawyer is subject to liability to a client or
nonclient when a nonlawyer would be in similar circumstances."
Restatement (Third) of the Law Governing Lawyers § 56 (2000).
Accordingly, plaintiffs argue that OrlansMoran should have
refused to proceed with foreclosure after it received a phone
call from Ms. Speleos, shortly before the scheduled foreclosure
sale, informing them that foreclosure would violate the
provisions of HAMP.

Plaintiffs' argument is singularly unpersuasive in this case
because OrlansMoran was under an obviously conflicting and
independent duty to its client, BAC.  See Page v. Frazier, et
al., 388 Mass. 55, 63 (1983) (declining to find attorneys

negligent to nonclients for faulty title search where attorney was under "an independent and potentially conflicting duty to a client"); see also Lamare v. Basbanes, 418 Mass. 274, 276 (1994) ("Within the adversary system, there is no room for existence of a duty running to the adversary." (citation and quotation omitted)).  Indeed, Comment b to the Restatement provision cited above cautions that:

> [C]ourts considering the civil liability of lawyers must consider how a ruling that affirms or precludes liability would affect the vigorous representation of clients within the limits of the law .... [and] must also take care, in construing liability provisions and professional rules, to avoid subjecting lawyers to inconsistent obligations.

Id. § 56, cmt. b.

Here, the interests of OrlansMoran's client, BAC, were in direct conflict with the interests of plaintiffs, and OrlansMoran was entitled to rely on its client's reasonable assurances that the prerequisites for foreclosure were present.  Under the circumstances of this case, OrlansMoran owed no duty to plaintiffs to investigate the legality of that foreclosure due to Ms. Speleos' phone call.

### 4.   Violation of the Fair Debt Collection Practices Act ("FDCPA") (Count IV) Against OrlansMoran

Plaintiffs assert that OrlansMoran violated the FDCPA, 15 U.S.C. §§ 1692f and 1692f(6), by proceeding with the foreclosure of their home despite 1) being informed by Ms. Speleos that plaintiffs' modification application was pending and foreclosure

would violate the HAMP guidelines, Pls.' First Am. Compl. ¶¶ 68-70, and 2) "there being no right to do so, since the foreclosure was illegal as an unfair and deceptive trade practice." Id. ¶ 72.

The Court previously allowed this claim to go forward because OrlansMoran had presented no argument that it be dismissed. It had, instead, denied the allegations contained Count IV in its answer filed in September, 2010. OrlansMoran now moves to dismiss Count IV, contending that 1) it cannot be held liable for harm caused incidental to its representation of BAC, 2) the act of foreclosing is not covered under the FDCPA, and 3) it did not engage in any unfair debt collection.

Under the FDCPA, 15 U.S.C. § 1692f, "[a] debt collector may not use unfair or unconcionable means to collect or attempt to collect any debt." In addition to that general language, subparagraph (6) of the same section specifically prohibits

> [t]aking or threatening to take any nonjudicial action to effect dispossession or disablement of property if ... there is no present right to possession of the property claimed as collateral through an enforceable security interest.

Id. § 1692f(6).

The first issue in this case is whether OrlansMoran, the law firm engaged by BAC to commence foreclosure proceedings of the Property, is exempt from the scope of the FDCPA. Section 1692f applies to a "debt collector", a term defined in § 1692a(6) as:

> any person who uses any instrumentality of interstate
> commerce or the mails in any business the principal
> purpose of which is the collection of any debts, or who
> regularly collects or attempts to collect, directly or
> indirectly, debts owed or due or asserted to be owed or
> due another.... For the purpose of section 1692f(6) of
> this title, such term also includes any person who uses
> any instrumentality of interstate commerce or the mails
> in any business the principal purpose of which is the
> enforcement of security interests.

The United States Supreme Court has held that the FDCPA "applies to attorneys who 'regularly' engage in consumer-debt-collection activity." Heintz v. Jenkins, 514 U.S. 291, 299 (1995).  As defendant has already admitted that it regularly uses the mail and telephone to attempt to collect debts from consumers for third parties, it is a debt collector under the FDCPA and is not exempt simply because it is engaged in the practice of law.  See id.; see also Def. OrlansMoran Answer, PLLC, ¶¶ 62-63; Pls.' First Am. Compl. ¶¶ 62-63.

Although defendant fits the general definition of a "debt collector," its alleged wrongful activity in this case consisted solely of conducting a non-judicial foreclosure of plaintiffs' home.  There is disagreement in the courts over how the FDCPA applies in this situation.  See Lettenmaier v. Fed. Home Loan Mortg. Corp., No. CV-11-156, 2011 WL 1938166, at *9 (D. Or. May 20, 2011) (citation omitted).  Some courts have held that a lender is not a "debt collector" when it merely initiates foreclosure because the act of foreclosing does not constitute the collection of "debt" as defined in the statute.  For example,

-11-

in Hulse v. Ocwen Fed. Bank, FSB, the United States District
Court of the District of Oregon held that foreclosure was not
debt collection, reasoning that:

> Foreclosing on a trust deed is distinct from the
> collection of the obligation to pay money.... Payment of
> funds is not the object of the foreclosure action.
> Rather, the lender is foreclosing its interest in the
> property.

195 F. Supp. 2d 1188, 1204 (D. Or. 2002).  In Wilson v. Draper &
Goldberg, PLLC, however, the Fourth Circuit expressly disagreed
with the holding in Hulse and stated that a debt "remain[s] a
'debt' even after foreclosure proceedings commence[]."  443 F.3d
373, 376 (4th Cir. 2006).  In the Fourth Circuit's view, to hold
that foreclosure proceedings were not debt collection activity
would create a nonsensical "enormous loophole" in the FDCPA that
would exempt a debt simply because it "happened to be secured by
a real property interest and foreclosure proceedings were used to
collect the debt."  Id.

The statute itself, however, distinguishes debt collection
from security interest enforcement in its definition of a "debt
collector."  Section 1692a(6), quoted above, provides a general
definition of "debt collector" but then adds that, under
§ 1692f(6), the term also includes an entity enforcing security
interests.  The plain implication is that a "debt collector"
under any other provision does not include such an entity.  See
Lettenmaier, 2011 WL 1938166, at *11 ("[I]f the general

definition of debt collector ... include[d] the enforcement of a security interest, the third sentence ... directed to section 1692f(6) would be surplusage ...." (internal quotation and citation omitted)); see also Montgomery v. Huntington Bank, 346 F.3d 693, 700-01 (6th Cir. 2003) ("[E]xcept for purposes of § 1692f(6), an enforcer of a security interest ... does not meet the statutory definition of debt collector ....").

The Court therefore concludes that OrlansMoran cannot be held liable under the general provision of § 1692f because it was not collecting a debt but rather enforcing a security interest. Of course, a foreclosing entity that goes beyond what is needed to foreclose may engage in debt collection and thus subject itself to liability under other provisions, so long as it meets the general definition of "debt collector."  See Brown v. Morris, 243 Fed. Appx. 31, 35-36 (5th Cir. 2007); Castrillo v. American Home Mortg. Servicing, Inc., 670 F. Supp. 2d 516, 525 (E.D. La. 2009); Pettway v. Harmon Law Offices, P.C., No. 03-CV-10932, 2005 WL 2365331, at *5 (D. Mass. Sept. 27, 2005).

Plaintiffs in this case, however, allege only that OrlansMoran commenced the non-judicial foreclosure of their home at BAC's instruction.  They do not allege that OrlansMoran sent them inaccurate or deceptive information or that any action was taken beyond that necessary to foreclose.  The Court will therefore grant OrlansMoran's motion to dismiss with respect to

the alleged violation of the general provision of § 1692f.

Defendant may, of course, still be liable under § 1692f(6), which is specifically applicable to the enforcement of security interests.  See Maynard v. Cannon, P.C., 650 F. Supp. 2d 1138, 1142-43 (D. Utah 2008) (holding that law firm engaged solely to intitiate a nonjudicial foreclosure by enforcing the security interest was subject only to § 1692f(6)).  That subsection prohibits enforcing such an interest where there is "no present right to possession of the property claimed as collateral." § 1692(f)(6)(A).  The question is thus whether OrlansMoran foreclosed on the Property when there was no present right to possess it.

"A court should look to state law requirements to determine whether there was a present right to possession under the FDCPA." Revering v. Northwest Bank Minn., N.A., No. Civ. 99-480/RHK/JMM, 1999 WL 33911360, at *5 (D. Minn. Nov. 30, 1999).  Plaintiffs claim that OrlansMoran had no present right to possession because foreclosure was illegal as an unfair and deceptive trade practice.  That argument may be proper under the general provision of § 1692(f), which prohibits unfair debt collection practices, but it is irrelevant to § 1692f(6), which relates only to whether there was a present right to possession of the property.

Here, defendant BAC's right to foreclose was established in

-14-

the original loan documents.  Once plaintiffs defaulted, BAC and,
by extension, OrlansMoran had a right to foreclose pursuant to
Mass. Gen. Laws ch. 244, § 14.  See Stagikas v. Saxon Mortg.
Servs., Inc., Civ. No. 10-40164, 2011 WL 2652445, at *7 (D. Mass.
July 5, 2011) (rejecting argument that there was no present right
to possession where loan servicer foreclosed in violation of a
TPP because TPP did not purport to modify original loan
agreement).  The Court will therefore allow defendant's motion to
dismiss with respect to the alleged violation of § 1692f(6).

### 5.  Violation of the Chapter 93A (Count V) Against BAC and Fannie Mae

Chapter 93A prohibits "unfair or deceptive acts or practices
in the conduct of any trade or commerce."  Mass. Gen. Laws ch.
93A, § 2.  An individual has a private right of action under § 9
of that Chapter.  To prevail on a Chapter 93A claim, the
plaintiff:

> must prove that a person who is engaged in trade or
> business committed an unfair or deceptive trade practice
> and that the [plaintiff] suffered a loss of money or
> property as a result.

Morris v. BAC Home Loans Servicing, L.P., 775 F. Supp. 2d 255,
259 (D. Mass. 2011) (citations omitted).  To prove a Chapter 93A
claim, "it is neither necessary nor sufficient that a particular
act or practice violate common or statutory law."  Mass. Eye &
Ear Infirmary v. QLT Phototherapeutics, Inc., 552 F.3d 47, 69
(1st Cir. 2009) (citations omitted).

-15-

A violation of HAMP that is unfair or deceptive in and of itself can, therefore, create a viable claim under Chapter 93A even though HAMP does not provide a private cause of action. See Morris, 775 F. Supp. 2d at 259 (citing Bosque v. Wells Fargo Bank, N.A., No. 10-10311, 2011 WL 304725, at *7-8 (D. Mass. Jan. 26, 2011)).  For such a claim to proceed, however, not only must the violation itself be unfair or deceptive but recovery under Chapter 93A must also be compatible with the objectives and enforcement mechanisms of the underlying statute. Ordning v. BAC Home Loans Servicing, L.P., No. 10-10670, 2011 WL 99016, at *6 (D. Mass. Jan. 10, 2011).  Several judges in this district (including this one) have conducted a three-part inquiry to decide whether a 93A claim will lie for violation of the HAMP Guidelines:

> (1) [H]ave plaintiffs adequately plead that defendant violated HAMP; (2) are those violations of the type that would be independently actionable conduct under chapter 93A even absent the violation of a statutory provision (i.e. are the violations unfair or deceptive); and (3) if the conduct is actionable, is recovery pursuant to chapter 93A compatible with the "objectives and enforcement mechanisms" of HAMP?

Okoye v. Bank of New York Mellon, No. 10-11563, 2011 WL 3269686, at *8 (D. Mass. July 28, 2011) (citing Morris, 775 F. Supp. at 259 (quoting Ording, 2011 WL 99016, at *7)).

As to the first prong, plaintiffs have adequately alleged violations of specific HAMP regulations which prohibit foreclosing on a homeowner whose application for modification is

pending.  With respect to the third prong, recovery under Chapter 93A has been found to be generally compatible with the objectives and enforcement mechanisms of HAMP.  See Kozaryn v. Ocwen Loan Servicing, LLC, No. 10-11510, 2011 WL 1882370, at *2 (D. Mass. May 17, 2011) (citing Morris, 775 F. Supp. 2d at 260-61; Blackwood v. Wells Fargo Bank, N.A., 2011 WL 1561024, at *4 (D. Mass. Apr. 22, 2011)).

What is at issue here is the second prong, i.e., whether the HAMP violation was unfair or deceptive in and of itself.  An act or practice is "deceptive" under Chapter 93A "if it could reasonably be found to have caused a person to act differently from the way he [or she] otherwise would have acted." Aspinall v. Philip Morris Cos., 442 Mass. 381, 395 (2004).  Although there is no explicit definition for an "unfair" act or conduct under Chapter 93A, Massachusetts courts considering unfairness look to:

> (1) whether the practice ... is within at least the penumbra of some common-law, statutory or other established concept of unfairness; (2) whether it is immoral, unethical, oppressive, or unscrupulous; [and] (3) whether it causes substantial injury to consumers (or competitors or other businessmen).

Mass. Eye & Ear Infirmary, 552 F.3d at 69 (citation omitted).  Although deception and unfairness are factual inquiries, "the boundaries of what may qualify for consideration as a [Ch.] 93A violation is a question of law."  Milliken & Co. v. Duro Textiles, LLC, 451 Mass. 547, 563 (2008) (citation omitted).

Plaintiffs allege that defendants BAC and Fannie Mae refused

to cancel the scheduled foreclosure sale and actually foreclosed on their home despite having received plaintiffs' HAMP application and despite repeated phone calls from Ms. Speleos and an MHA representative informing them that foreclosure would be in violation of HAMP. Pls.' First Am. Compl. ¶¶ 26-31.

Plaintiffs assert that, in light of the phone calls, BAC and Fannie Mae's "wrongful foreclosure" was both willful and knowing because BAC knew that it was proceeding in violation of the HAMP guidelines. Plaintiffs also assert that the refusal of BAC and Fannie Mae to make a settlement offer in response to plaintiffs' demand letter was done in bad faith.

Defendants respond that plaintiffs fail to state a claim under Chapter 93A because they have alleged no unethical, oppressive or unscrupulous conduct. They argue that Ms. Speloes was informed that she could proceed with her modification application even after the foreclosure sale and that she would not lose physical possession of her property until after her modification application was considered.

The essence of plaintiffs' claim is that persisting in a foreclosure that is known to violate the HAMP Guidelines amounts to unfair and deceptive conduct. Plaintiffs rely mainly on a decision from United States District Judge Patti Saris of this district in Morris v. BAC Home Loans Servicing, L.P., which held that violations of HAMP that are not merely technical or clerical

will generally be "unfair" under Chapter 93A:

> Applying [the unfairness] factors to the HAMP context, the regulatory requirements of HAMP form the statutory "penumbra", a dereliction of duty under the HAMP contract is colorably unethical or unscrupulous (especially in light of the applicant's reasonable expectations), and there is potential substantial injury to an applicant facing foreclosure and/or substantial arrearages.

775 F. Supp. 2d at 263.

Despite that expansive language, however, similar Chapter 93A claims generally survive motions to dismiss only where a plaintiff pleads improper behavior beyond the impropriety inherent to a HAMP violation itself.  Thus, even in the <u>Morris</u> case, Judge Saris found that plaintiffs had not stated a Chapter 93A claim where they alleged only that loan servicers had not "timely or properly evaluate[d] the plaintiffs for HAMP."  <u>Id.</u> at 263.  The court denied the motion to dismiss on the condition that plaintiffs amended their complaint to include information they provided at oral argument, namely that the loan servicer had exhibited a pattern of "unfairly disregard[ing] and mishandl[ing] plaintiffs' HAMP application."  <u>Id.</u>

In <u>Blackwood</u> v. <u>Wells Fargo Bank, N.A., et. al.</u>, Magistrate Judge Dein found a Chapter 93A claim to lie where the plaintiff alleged that loan servicers had foreclosed while a modification application was pending <u>and</u> had misrepresented both the status of plaintiff's modification application and the servicer's "intention to foreclose."  2011 WL 1561024, at *4.  In <u>Okoye v.</u>

Bank of New York Mellon, Judge Woodlock found a Chapter 93A claim
to lie where loan servicers specifically represented to borrowers
that compliance with the trial period plan ("TPP") would lead to
permanent modification but then had denied the modification for
failure to submit financial documents despite borrowers'
compliance with the TPP. 2011 WL 3269686, at *9-10; see Alpino v.
JPMorgan Chase Bank, No. 10-12040, 2011 WL 1564114, at *5 (D.
Mass. 2011) (Saris, J.) (finding that plaintiffs may have a claim
under Chapter 93A for loan servicer's failure to consider them
for a HAMP modification before foreclosing, "as long as they can
show that this failure was deceptive or unfair").

Plaintiffs here have pled a willful violation of HAMP
guidelines but do not plead unfair or deceptive conduct
accompanying that violation.  Plaintiffs have not alleged any
misrepresentations, broken promises or persistent processing
mistakes and/or delays on the part of defendants BAC and Fannie
Mae.  The Court therefore must determine whether proceeding with
foreclosure that is known to be in violation of HAMP can amount
to unfair or deceptive conduct actionable under Chapter 93A,
i.e., whether a knowing and willful HAMP violation is a fortiori
unfair or deceptive.

This is a close question.  On balance, however, plaintiffs'
complaint raises a genuine issue of fact with respect to whether
defendants' conduct was unfair or deceptive.  Mortgagors have a

right to presume that foreclosure will not proceed in violation of HAMP in any event, let alone in a situation such as alleged here where the servicer was repeatedly made aware of the intervening application for modification and of its impending violation of HAMP but refused to take corrective action.  The Court will, therefore, deny defendants' motion to dismiss Count V.

## ORDER

In accordance with the foregoing,

1)   the motion to dismiss of defendants BAC and Fannie Mae (Docket No. 34) is, with respect to Counts II and III, **ALLOWED**, and is, with respect to Counts I and V, **DENIED**.

2)   Defendant OrlansMoran's Motion to Dismiss (Docket No. 37) is **ALLOWED**.


**So ordered.**

                             /s/ Nathaniel M. Gorton
                            Nathaniel M. Gorton
                            United States District Judge


Dated October 14, 2011